**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NICHOLAS WHITETTO,**

      **Petitioner,**

**v.**                                  **Case No.: 8:19-cv-3151-T-27AEP**
                                       **Criminal Case No.: 8:18-cr-440-T-27AEP**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

**ORDER**

      **BEFORE THE COURT** are Petitioner Whitetto's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 1), and the United States' Response (cv Dkt. 8). Upon review, Whitetto's § 2255 motion is **DENIED**.

**BACKGROUND**

      In 2018, Whitetto was indicted and charged with conspiracy to commit access device fraud (Count One) and multiple counts of access device fraud (Counts Two through Eight). (cr Dkt. 1). He pleaded guilty to Count One pursuant to a written plea agreement. (cr Dkts. 50, 106). At his change of plea hearing, he stipulated to the plea agreement's factual basis, which reflected that from August 2013 to April 2014, he and his coconspirators agreed to commit credit card fraud by calling banks, providing personal information of card holders, adding their names to the accounts, and having the credit cards mailed to addresses in the Tampa Bay area. (cr Dkt. 50 at 20; cr Dkt. 106 at 38-42). They fraudulently obtained at least 40 credit cards, which they used to make purchases and conduct cash advance withdrawals at banks. (cr Dkt. 50 at 20). Whitetto's coconspirators paid him when they used the cards to withdraw cash advances. (Id. at 22).

1

Also at the change of plea hearing, Whitetto confirmed that he was pleading guilty to Count One because he was "guilty to the crime." (cr Dkt. 106 at 43). He further confirmed that he had read and understood the charges against him, discussed the case with his attorney, and was satisfied with his attorney's advice and representation. (Id. at 6-7, 15-18). He denied being threatened or forced to plead guilty or being promised anything independent of the plea agreement. (Id. at 25). He also understood that by pleading guilty he was waiving certain constitutional rights, including the right to a jury trial. (Id. at 34-36). He further acknowledged the maximum sentence of five years on Count One and that the sentencing guidelines were advisory. (Id. at 21-22, 29, 33-34). He was also advised of his right to appeal his sentence and confirmed that he understood the plea agreement's limited appeal waiver.[1] (Id. at 24-25). His guilty plea was accepted as intelligent, knowing, and voluntary, and he was adjudicated guilty. (Id. at 44; cr Dkt. 61).

The presentence investigation report (PSR) calculated Whitetto's total offense level as 15 due to a 12-level upward adjustment based on specific offense characteristics relating to the amount of loss, the number of victims, and the possession and use of access devices, and a 3-level reduction for acceptance of responsibility. (cr Dkt. 76 ¶¶ 41-51). With a criminal history category

---

[1] The plea agreement included an appeal waiver in which Whitetto waived

the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range *as determined by the Court* pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then [he] is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(cr Dkt. 50 at 17 (emphasis in original)).

of V, he faced a guidelines range of 37-46 months. (Id. ¶¶ 66, 118). There were no objections to the PSR or the application of the guidelines. (Id. at 32; cr Dkt. 102 at 4).

Counsel filed a sentencing memorandum in which he requested a downward variance based on the 18 U.S.C. § 3553(a) factors. (cr Dkt. 75). In determining an appropriate sentence, the Court noted that although no enhancement based on a role adjustment was imposed, the undisputed facts indicated that Whitteto was an organizer of the scheme. (cr Dkt. 102 at 22). He was sentenced to 42 months and did not appeal his convictions or sentence. (Id. at 27; cv Dkt. 1 at 2).

In his § 2255 motion, Whitetto contends his guilty plea was involuntary and his counsel was ineffective in failing to adequately advise him about an appeal. (cv Dkt. 1). The United States responds that he is not entitled to relief. (cv Dkt. 8). The Court agrees.[2]

## STANDARD

To establish ineffective assistance of counsel, Whitetto must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

---

[2] Whitetto did not file a reply to the United States' response as authorized by the Court. (cv Dkt. 5). The order authorizing the reply was mailed to Whitetto and "refused." He has filed other pleadings in the interim. (cr Dkts. 108, 111). An evidentiary hearing is unnecessary since the § 2255 motion "and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b).

under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* (internal quotation marks and citations omitted); *see Lafler v. Cooper*, 566 U.S. 156 (2012).

Notably, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 214CV584FTM38MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

4

**DISCUSSION**

Whitetto's claim that his guilty plea was involuntary is procedurally defaulted and belied by the record. And he has not established that counsel provided ineffective assistance as to his appellate rights. Accordingly, the § 2255 motion is due to be denied.

***Ground One***

In Ground One, Whitetto contends his "guilty plea did not meet the Constitution's requirement for voluntariness." (cv Dkt. 1 at 4). He explains that he pleaded guilty

> without an opportunity to review the evidence (more accurately having been misinformed as to that evidence) and without correctly comprehending the true nature of the charges against him. If [he] had been properly informed, then he would not have pleaded guilty and instead gone to trial.
>
> For example, the government relied on three alleged conspirators: Frank Tillman, Sharon Smith, and Shana Smith. The trio told the postal inspectors that Mr. Whitetto took them to the bank to withdrew large sums of money, and that [he] then paid the trio a small fee. What the trio did not know, the postal inspector did not discover, and Mr. Whitetto did know was relevant, was that at the time [he] was in jail and could not have made the trips. . . . [He] was in jail during the alleged 10 day offense conduct thus he could not have committed the crime.
>
> If Mr. Whitetto had known the actual nature of the crime then he would not have pleaded guilty because he did not take the conspirators to the bank and he could have proved that "negative" by showing he was in jail during the crime.

(cv Dkt. 1-1 at 1). His contentions are without merit.

Whitetto's Rule 11 colloquy belies his claim that his guilty plea was not entered knowingly, intelligently, and voluntarily, and specifically his assertion that he did not understand the charges or have an opportunity to review the evidence.[3] Indeed, "[t]here is a strong presumption that

---

[3] As discussed, at his change of plea hearing Whitetto confirmed that he read and understood the charges against him, discussed the case with his attorney, and was satisfied with his attorney's advice and representation. (cr

statements made during the plea colloquy are true," and Whitetto "bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted). The plea colloquy further satisfied the requirements of Rule 11 of the Federal Rules of Criminal Procedure.[4] And Whitetto did not object to the Magistrate Judge's Report and Recommendation concerning his guilty plea. *See United States v. Barefoot*, 342 F. App'x 480, 484 (11th Cir. 2009) (finding argument that guilty plea was not entered intelligently and knowingly waived because of failure to object to report and recommendation).

Additionally, as the United States observes, the claim is procedurally defaulted because Whitetto did not challenge his guilty plea on appeal. (cv Dkt. 8 at 5); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) (noting that "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked" and the "voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review").[5]

---

Dkt. 106 at 6-7, 15-18). He denied being threatened or forced to plead guilty or being promised anything independent of the plea agreement. (Id. at 25). He also understood that by pleading guilty he was waiving certain constitutional rights, including the right to a jury trial. (Id. at 34-36). He further acknowledged the maximum sentence of five years on Count One and that the sentencing guidelines were advisory. (Id. at 21-22, 29, 33-34).

[4] Rule 11 "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea" by addressing three core concerns: (1) the guilty plea must be free of coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Gandy*, 710 F.3d 1234, 1240 (11th Cir. 2013) (citations omitted).

To the extent Whitetto challenges the validity of his appeal waiver, the claim is without merit since he agreed to the provision knowingly and voluntarily in his plea agreement and during his change of plea hearing, and there is no indication that he misunderstood or objected to it. (cr Dkt. 50 at 17; cr Dkt. 106 at 24-25). *See United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) ("The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver.").

[5] The Eleventh Circuit explains:

To the extent Whitetto argues that ineffective assistance of counsel excuses the procedural default, or that he seeks to raise an independent ineffective assistance of counsel claim, the claim is due to be denied. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). First, as to any contention that counsel should have challenged the evidence against him prior to entry of the guilty plea, Whitetto waived all claims of pre-plea ineffective assistance of counsel by pleading guilty. *See, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979). In any event, he cannot show deficient performance or prejudice.

Whitetto reasons that although the United States relied on his coconspirators' statements that he "took them to the bank to withdr[a]w large sums of money, and that [he] paid the trio a small fee," he was in jail at the time and could not have made the trips. He has not shown, however, that counsel's performance was deficient in recommending that he plead guilty, despite this assertion.[6] And he does not specifically assert that counsel misinformed him of the evidence.

First, Whitetto was charged with, and admitted to participation in, a conspiracy spanning from August 2013 to April 2014. (cr Dkt. 1 at 2; cr Dkt. 50 at 20). He further admitted that he and

---

A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so. . . . Defendants can avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence.

*Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014) (citations omitted). Cause requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim previously." *Lynn v. United States*, 365 F.3d 1225, 1235 n.20 (11th Cir. 2004) (citations and internal quotation marks omitted). And "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citations omitted). Whitetto fails to make an adequate showing of actual innocence.

[6] In an affidavit included in the United States' Response, counsel avers that he consulted with Whitetto about the decision to plead guilty or proceed to trial. (cv Dkt. 8-2 ¶ 10). This consultation included advice as to the charges, the possibility of additional charges, and the anticipated witnesses. (Id. ¶¶ 5-10). Counsel further avers that although he informed Whitetto that he could review the evidence in his case, counsel has no memory of him requesting discovery or having an issue with counsel's explanation of the evidence against him. (Id. ¶ 23). It is, in any event, unnecessary to rely on counsel's averments, since the motion and record show that Whitetto is not entitled to relief.

his coconspirators agreed to call banks to provide personal information of card holders, add their names to the accounts, and have credit cards mailed to addresses in the Tampa Bay area. (cr Dkt. 50 at 20). They used the cards to make purchases and conduct cash advance withdrawals. (Id); *see also* (cr Dkt. 76 ¶¶ 20, 23 (describing Whitetto's conduct on August 2, 2013, and January 22, 2014)). This admitted conduct is sufficient to support a conviction of conspiracy to commit access device fraud, even if Whitetto did not drive his coconspirators to banks during a ten-day period. Accordingly, it is of no consequence that he was in custody on the date identified as the "date of offense" in his attached "Sentence Monitoring Computation Data." (cv Dkt. 1-1 at 5).

Additionally, although Whitetto asserts that he would not have pleaded guilty had he known the nature of the charges, the factual basis in his Plea Agreement and his Rule 11 colloquy contradict that assertion. Accordingly, he cannot demonstrate prejudice. Indeed, he received a substantial benefit by entering into the plea agreement, which required the United States to dismiss the remaining seven counts against him, recommend a sentence within the guidelines, and not bring additional charges, including potentially aggravated identity theft. (cr Dkt. 50 at 2-3; cr Dkt. 102 at 16-17; cv Dkt. 8-2 ¶ 5). The agreement further allowed for a three-level reduction for acceptance of responsibility and the possibility of a sentence reduction based on substantial assistance. (cr Dkt. 50 at 4-6). In sum, Whitetto fails to demonstrate deficient performance, or prejudice, and therefore his claim of ineffective assistance of counsel fails.

Accordingly, because the record belies Whitetto's claim that his guilty plea was involuntarily entered and the claim is procedurally defaulted, Ground One is due to be denied.

*Ground Two*

In Ground Two, Whitetto contends "counsel's deficient performance at the notice-of-appeal stage deprive [him] of the constitutionally guaranteed assistance of counsel." (cv Dkt. 1 at 5). He explains that he

> disagreed with the sentence imposed. He told his attorney that he did not get this money and that he was not a leader. He asked counsel what could be done to challenge the sentence. Counsel told him nothing, that he had pleaded guilty.
>
> Counsel overlooked that this court did not conduct a complete U S.S.G. § 1B1.3 analysis thus the sentence rested on a frail foundation, and could be reversed even on a plain-error review if appealed. If counsel had advised Mr. Whitetto of this, then Mr. Whitetto would have appealed.
>
> Moreover, counsel failed to comprehend that under the then known circumstances, a Rule 35(a) motion likely would have permitted the court to set aside the sentence and conduct the proper foreseeability and jointly-undertaken analysis. . . .
>
> Ultimately, counsel ignored his duty to follow Mr. Whitetto's instructions concerning challenging the sentence; and defense counsel completely abdicated his duty to advise Mr. Whitetto concerning the benefits and detriments of appealing the criminal judgment.
>
> If counsel had met his obligations, then he would have told Mr. Whitetto that absent a direct appeal any challenge to the sentence was either incognizable thus unreviewable, or subject to procedural default thus practically unreviewable. Further, counsel should have explained to Mr. Whitetto that even retroactively applicable Supreme Court ruling were subject to procedural default and would not apply to his sentence unless preserved through an appeal. If counsel had told him the law then he would have insisted on a direct appeal.
>
> Furthermore, if defense counsel had told Mr. Whitetto that the government would facilitate the appeal by providing an attorney and the transcripts without charge, then he would have appealed in order to obtain a second opinion from a different attorney and a copy of the transcripts.

(cv Dkt. 1-1 at 2-3). These contentions are without merit.

First, although Whitetto contends the Court "did not conduct a complete U.S.S.G. § 1B1.3 analysis," he does not specify any basis to challenge the Court's application of the guidelines. Moreover, he does not specify how a Rule 35(a) motion would have affected his sentence. To the extent he argues counsel was ineffective in failing to object to or seek to correct the sentence, the claim is due to be denied. As discussed, the Court imposed a sentence within the guidelines based on the undisputed facts in the plea agreement and PSR, there were no objections to the PSR, and no role adjustment was assessed. The undisputed facts reflected that Whitetto's coconspirators paid him to use the fraudulent credit cards and that he recruited some of the coconspirators. (cr Dkt. 50 at 22; cr Dkt. 76 ¶ 35). And his contention that he did not receive money from the scheme is belied by his statements at the change of plea hearing. *Patel*, 252 F. App'x at 975. There was no basis to object and accordingly, counsel was not ineffective in failing to raise a meritless argument. *See Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008).

As to Whitetto's claim relating to an appeal, an attorney's failure to file a notice of appeal as requested by a defendant constitutes deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, if a defendant does not instruct counsel to file a notice of appeal or ask that an appeal not be taken, a court must determine whether counsel "consulted" with the defendant about an appeal. *Id.* at 478. This means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for

example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Relevant factors include whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly . . . waived some or all appeal rights." *Id.*

Counsel's performance is not shown to have been deficient concerning Whitetto's right to appeal. First, Whitetto has not alleged that he expressly requested counsel to file a notice of appeal. Indeed, his allegations suggest that he did not request counsel to file a direct appeal. *See, e.g.*, (cv Dkt. 1-1 at 3 ("If counsel had told him the law then he would have insisted on a direct appeal.")). Rather, he merely asserts that after sentencing he told counsel that he did not obtain the money from the scheme and was not a leader and asked counsel "what could be done" to challenge the sentence. (cv Dkt. 1-1 at 2). Counsel purportedly replied "nothing" because Whitetto had pleaded guilty.[7] Moreover, after he had been sentenced, the Court informed Whitetto that he had a right to appeal, that counsel would be appointed to assist with the appeal, and that any notice of appeal must be filed within fourteen days, without prepayment of the filing fee. (cr Dkt. 102 at 38).

Second, there was no reason to think that a rational defendant would want to appeal. Indeed, the conviction followed a guilty plea and Whitetto received a sentence within the guidelines. Moreover, he fails to point to nonfrivolous grounds to appeal, and the appeal waiver in the plea agreement precluded an appeal, except on the basis that the sentence exceeded the guidelines range as determined by the Court or the statutory maximum penalty, or that the sentence violated the

---

[7] Counsel avers that immediately after sentencing Whitetto did not express a desire to appeal. (cv Dkt. 8-2 ¶ 14). To the extent this presents a factual dispute with Whitetto's allegations, it is unnecessary to rely on the averment to resolve the motion.

Eighth Amendment. (cr Dkt. 50 at 17). His complaints to counsel that he did not receive the money from the conspiracy and was not a leader relate to the application of the guidelines and, therefore, would have been barred by the appeal waiver. Accordingly, counsel's purported statement that "nothing" could be done was not inaccurate.

Even if Whitetto reasonably demonstrated to counsel that he was interested in appealing by asking "what could be done," counsel satisfied his obligation to consult with him. Indeed, although Whitetto asserts without any specificity that "counsel completely abdicated his duty to advise [him] concerning the benefits and detriments of appealing the criminal judgment," he does not expressly refute counsel's averments that counsel "explained and reviewed Mr. Whitetto's appellate rights . . . [and] discussed his appellate rights when [Whitetto] contemplated entering a plea via plea agreement, when we reviewed the plea agreement, after his sentencing hearing, and finally when we spoke over the phone, fifteen days after the judgment was entered in his case." (cv Dkt. 8-2 ¶ 12).[8]

Counsel further explains that on April 8, 2019, Whitetto sent him a text message expressing a desire to appeal but that he was unaware of the text until April 10, 2019, fifteen days after judgment was entered on March 26, 2019. (Id. ¶ 14); cv Dkt. 8-3 at 5). When counsel saw the message, he immediately attempted to contact Whitetto to discuss what potential steps to take. (cv

---

[8] Whitetto's general assertion that counsel failed to discuss the advantages and disadvantages of an appeal appears to relate to counsel's purported failure to explain "that absent a direct appeal any challenge to the sentence was either incognizable thus unreviewable, or subject to procedural default thus practically unreviewable," that "even retroactively applicable Supreme Court rulings were subject to procedural default and would not apply to his sentence unless preserved through an appeal," and that "the government would facilitate the appeal by providing an attorney and the transcripts without charge." (cv Dkt. 1-1 at 2-3). However, Whitetto provides no authority supporting his contention that, as part of the required consultation, an attorney must discuss these issues.

Dkt. 8-2 ¶ 17). He attempted to call Whitetto on April 10 and 11, and sent a message on April 10 stating,

> Nick, I just saw this text. Call me about this. Yesterday was the cut off for the notice of appeal. Because you entered a plea through a plea agreement your appealable issues are very limited and I don't think you have a legitimate appeal to make based upon the grounds available. Regardless, I need you to call me about this so we can discuss what steps to take. Call me today if you can.

(cv Dkt. 8-3 at 5; cv Dkt. 8-2 ¶¶ 15-17).

On April 11, counsel spoke with Whitetto, explained that an appeal was untimely, and asked him why he did not make additional efforts to contact him or his office. (cv Dkt. 8-2 ¶ 18). Counsel further offered to file a notice of appeal and request a stipulation from the United States for an extension of time based on excusable neglect. (Id). Whitetto announced that he did not want to appeal. (Id. ¶ 20). Whitetto does not dispute these averments.

To the extent counsel's averments are credited, the record does not support that counsel was ineffective.[9] And apart from the single message sent one day prior to the expiration of the deadline to file a notice of appeal, there is no evidence that Whitetto attempted to contact counsel. Tellingly, he does not assert that counsel's failure to timely respond to his text message constitutes deficient performance, or address in his motion any discussions with counsel after sentencing about his right to appeal.

---

[9] These circumstances, for example, are unlike *United States v. Rivas*, 450 F. App'x 420 (5th Cir. 2011), in which the defendant sent a letter to counsel on the day of the deadline, instructing him to file an appeal. After receiving the letter, counsel did not attempt to contact the defendant. *Id.* at 422. In finding deficient performance, the Fifth Circuit nonetheless noted that "when a criminal defendant fails to inform his counsel in a timely manner that he wishes to appeal his conviction, counsel's failure to file a notice of appeal may not be professionally unreasonable." *Id.* at 424. Here, rather than "simply ignore [a] request to file an appeal," *id.* at 427-28, counsel immediately attempted to contact Whitetto and offered to file an untimely notice of appeal and seek a stipulation from the United States.

In sum, the undisputed record reflects that counsel was not asked or directed to file an appeal after Whitetto was sentenced, and there was no reason to think a rational defendant would want to appeal. And the undisputed record demonstrates that counsel satisfied his obligation to consult with Whitetto about an appeal. Accordingly, in the absence of deficient performance, Whitetto cannot establish ineffective assistance of counsel, and Ground Two is due to be denied.

### *Certificate of Appealability ("COA")*

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which requires Whitetto to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."). Because Whitetto has not met the required standard, he is not entitled to a COA and cannot appeal *in forma pauperis*.

**CONCLUSION**

Petitioner Whitetto's § 2255 motion is **DENIED**. (cv Dkt. 1). The Clerk is directed to enter

judgment in favor of the United States and against Whitetto, and to **CLOSE** the case.

**DONE AND ORDERED** this 2nd day of June, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record

15